**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ESTATE OF MARTICE MILLINER, | ) | |
| Deceased, by Khadija Farmer, | ) | |
| Administrator, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. |
| | ) | |
| CITY OF CHICAGO, Chicago Police | ) | |
| Officer ZAID ABDALLAH (Star 17673), | ) | |
| and OTHER UNKNOWN CHICAGO | ) | |
| POLICE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**COMPLAINT**

Khadija Farmer, Administrator of the Estate of Martice Milliner, deceased, by her

attorneys, Andrew M. Stroth of Action Injury Law Group LLC and Carlton Odim of Odim Law

Offices, complains of Defendants, City of Chicago, Chicago Police Officer Zaid Abdallah and

other unknown Chicago Police Officers, and states as follows:

**Introduction**

1.   This is a civil rights action. On July 9, 2015, Martice Milliner, a 27-year-old Black

man, lost his life. Defendant police officers shot him without lawful justification. When he was

shot, Martice Milliner presented no threat to Defendant police officers or to anyone else.

2.   The Chicago "police have no regard for the sanctity of life when it comes to people of

color."[1]The unconstitutional policies and practices of the Chicago Police Department result in the

---

1   Police Accountability Task Force. "(Executive Summary) Recommendations for Reform: Restoring Trust
    Between the Chicago Police and the Communities they Serve," p. 8 (April 2016) [https://chicagopatf.org/wp-
    content/uploads/2016/04/PATF_Final_Report_Executive_Summary_4_13_16-1.pdf; https://chicagopatf.org/wp-
    content/uploads/2016/04/PATF_Final_Report_4_13_16-1.pdf]

unjustified deaths of people of color, including Martice. The City of Chicago is therefore also liable for his death.

## Jurisdiction and Venue

3.   The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 et seq; the Judicial Code, §§ 1331 and 1343(a); and the Constitution of the United States.

4.   Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to plaintiffs claims also occurred in this judicial district.

## Parties

5.   Khadija Farmer was appointed Administrator of the Estate of Martice Milliner, deceased, by the Probate Division of the Circuit Court of Cook County, Illinois.

6.   Khadija Farmer is a resident of Cook County, Illinois, and is the sister of Martice Milliner.

7.   Defendant Zaid Abdallah and other unknown Chicago police officers were, at all times relevant to the allegations made in this complaint, duly appointed police officers employed by the City of Chicago, acting within the scope of their employment with the City of Chicago and under the color of state law. They are sued in their individual capacities.

8.   Defendant City of Chicago, a municipality duly incorporated under the laws of the State of Illinois, is the employer and principal of the defendant police officers. The City is responsible for the policies, practices and customs of its Police Department, City Council, Independent Police Review Authority, and Police Board.

## Facts

9.   On July 9, 2015 at approximately 11:00 p.m., Martice Milliner and others were celebrating a birthday on the 7500 block of South Langley Avenue, Chicago, Illinois, when

2

Defendants Zaid Abdallah and other unknown police officers arrived on the scene.

10. Defendants Zaid Abdallah and other unknown Chicago police officers got out of their automobiles and approached Martice.

11. Defendant Zaid Abdallah fired a bullet into the body of Martice Milliner, who fell to the ground. Then Defendants Zaid Abdallah and/or other unknown Chicago police officers fired several bullets into the back of Martice. The firing of bullets into Martice was without cause or provocation.

12. Unknown police officers who were present had the duty and opportunity to intervene to protect Martice and did nothing to assist him or prevent the shooting.

13. Defendants Zaid Abdallah and other unknown police officers jointly agreed and/or conspired with one another to prepare false, misleading, and incomplete official reports and to give a false, incomplete, and misleading versions of the events to their superiors and to the public. In order to cover up their misconduct, they falsely claimed that Pierre placed them in imminent fear of bodily harm.

14. The actions of the Defendants and their named and unnamed co-conspirators, as alleged in this complaint, were done jointly, in concert, and with shared intent and, therefore, constitute a continuing civil conspiracy under 42 U.S.C. § 1983.

**Count I**
**42 U.S.C. § 1983 Claim for Unconstitutional Seizure**

15. Plaintiff repeats and realleges paragraphs 1-14, as if they were fully set out in this Count.

16. The actions of Defendants Zaid Abdallah and other unknown Chicago police officers in stopping Martice Milliner and shooting him with a firearm without just cause and/or failing to

intervene to prevent this shooting, despite their having the opportunity to do so, violated Martice's rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

17. The actions of Defendants Zaid Abdallah and other unknown Chicago police officers as alleged in this Count 1 of the complaint were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiffs injuries.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff demands substantial actual or compensatory damages, and because Defendants Zaid Abdallah and other unknown Chicago police officers acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action, attorney's fees and whatever additional relief this Court deems equitable and just.

**Count 2**
**42 U.S.C. § 1983 Monell Policy Claim Against Defendant City of Chicago**

18. Plaintiff repeats and realleges paragraphs 1-17, as if they were fully set out in this Count.

19. The actions of Defendants Zaid Abdallah and other unknown Chicago police officers as alleged in this complaint were done under the authority of one or more interrelated de facto policies, practices and/or customs of the City of Chicago, its police department, Police Board, Independent Police Review Authority (I.P.R.A.), Internal Affairs Division of the Chicago Police Department (I.A.D.), Personnel Division, and/or Superintendents.

20. At all times material to the allegations contained in this complaint, the Defendant City of Chicago and its police department, Superintendents, I.P.R.A., I.A.D., Personnel Division and/or Police Board had interrelated de facto policies, practices, and customs which included,

4

among other things:

> a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers who commit acts of excessive force, including unjustified shootings;
>
> b) the police code of silence;
>
> c) the encouragement of excessive and unreasonable force;
>
> d) the failure to properly investigate shootings of civilians, particularly young Black men, by Chicago police officers;
>
> e) the failure to properly discipline, monitor, counsel and otherwise control Chicago police officers who engage in unjustified shootings; and/or
>
> f) the failure to properly train and supervise Chicago police officers with regard to discharging their weapons at civilians, particularly at young Black men.

21. In December 2015, in the wake of a thirteen month delay in the release of video which contradicts the false, misleading, incomplete account given by the Chicago Police Department of the shooting death of Laquan McDonald, another African American teenager, Mayor of the City of Chicago, Rahm Emanuel ("Mayor Emanuel"), appointed members to The Police Accountability Task Force.

22. On December 9, 2015, Mayor Emanuel speaking on the City of Chicago Council floor[2] said:

> "We need to talk about what to do differently to ensure that incidents like this [the Laquan McDonald Shooting] do not happen again, about the police culture that allows it and enables it ..."

* * *

> "They [The Police Accountability Task Force] have to examine decades of past practices that have allowed abusive police officers with records of complaints to escape accountability..."

* * *

---

2   The full text of Mayor Emanuel's speech can be found at: http://www.illinoisobserver.net/2015/12/09/full-text-emanuel-speech-chicago-police-accountability-mcdonald-shooting/

"This problem is sometimes referred to as the Thin Blue Line. Other times it is referred to as the code of silence. It is the tendency to ignore, deny or in some cases cover-up the bad actions of a colleague or colleagues.

No officer should be allowed to behave as if they are above the law just because they are responsible for upholding the law.

Permitting and protecting even the smallest acts of abuse by a tiny fraction of our officers leads to a culture where extreme acts of abuse are more likely, just like what happened to Laquan McDonald."

As a result of these public statements, among others, a City of Chicago motion in limine to bar any evidence of Mayor Rahm Emanuel's comments regarding the existence of a code of silence or attempts to call him to testify at trial has been denied in the case of *Shannon Spauling and Daniel Echeverria v. City of Chicago, et al*., No. 12-cv-8777 (N.D. Ill., May 18, 2016).

23. On April 13, 2016, the Police Accountability Task Force, issued its final report. It contains the conclusion that the Defendant City of Chicago and its law enforcement parastatals have for decades systemically failed in ways that cause extrajudicial death and injury at the hands of the police, random but pervasive physical and verbal abuse by the police, deprivation of basic and human constitutional rights, and lack of individual and systemic accountability.

24. These systematic failures disproportionately affect African American residents of the City of Chicago.

25. The Police Accountability Task Force, reviewing the Chicago Police Department's own data, found that of the 404 police involved shootings between 2008-2015, 74% were African American, as compared with 14% Hispanic, 8% White, and 0.25% Asian. The population of Chicago is almost evenly split among these groups: 32.9% African American, 31.7% White, and 28.9% Hispanic.

26. The Police Accountability Task Force also concluded: "Chicago's police accountability system is broken. The system is supposed to hold police officers accountable to the people they serve and protect by identifying potential misconduct, investigating it and, when

appropriate, imposing discipline. But at every step of the way, the police oversight system is riddled with legal and practical barriers to accountability." (Police Accountability Task Force. "[Executive Summary] Recommendations for Reform: Restoring Trust Between the Chicago Police and the Communities they Serve," p. 15 (April 2016) [https://chicagopatf.org/wp-content/uploads/2016/04/PATF_Final_Report_Executive_Summary_4_13_16-1.pdf])

27. At least 21 Chicago police officers are currently still employed by the department, some with honors, despite having shot citizens under highly questionable circumstances, resulting in payments by the City totaling at least $40 million to settle lawsuits.

28. At least 500 Chicago police officers with more than 10 misconduct complaints over the five year period from 2001 to 2006 are still employed by the department and six officers who have shot and killed civilians also have a large volume of complaints of misconduct, for which they have not received any penalty, discipline, supervision or re-training.

29. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including the unjustified discharge of an officer's weapon, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers have used excessive force and/or engaged in unjustified shootings of civilians.

30. In *Obrycka v. City of Chicago*, 2012 WL 11047181 (N.D. Ill.), the longstanding and widespread CPD code of silence was again exposed when video tape and cellular phone evidence revealed Chicago police officers trying to cover up and conceal a fellow officer's vicious beating of a female bartender within the City of Chicago. The *Obrycka* jury found that the City had either (1) a widespread custom or practice of failing to investigate and/or discipline its officers;

7

(2) a widespread custom or practice of a police code of silence; or (3) both; and a judgment was entered against the City.

31. The fact that the aforementioned code of silence exists, and that its adverse impact is allowed to occur through the actions and inactions of high ranking police officials including police Superintendents and former Office of Professional Standards (O.P.S.) and I.P.R.A. Directors, is also evidenced by the fact that while former Superintendent Martin, former O.P.S. Director Fogel, former Mayor Richard M. Daley and former O.P.S. Director Shines have all acknowledged publicly that they are aware of the existence of the custom and practice of a police code of silence, they or their successors have not acted to eliminate the code or to counteract its impact on police discipline, the use of excessive force, the fabrication of evidence and false arrests and prosecutions.

32. In a December 2014 report posted on the City's web site, entitled "Preventing and Disciplining Police Misconduct - An Independent Review and Recommendations Concerning Chicago's Police Disciplinary System," the City acknowledges that in recent years there continue to be both external and internal concerns raised about how complaints of misconduct by police officers were investigated and disciplined.

33. The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence are interrelated and exacerbate the effects of each other, to, in the words of former O.P.S. Director Fogel, "institutionalize police lying" and "immunize police officers from discipline."

34. In 2012, two Chicago Police officers filed a lawsuit for violation of their First Amendment rights and the Illinois Whistleblower Protection Act Statute, alleging an ongoing code of silence so pervasive that they were harassed, threatened, ostracized, and retaliated against by other officers, including supervisors, after they reported illegal conduct of a group of

officers. *Shannon Spauling and Daniel Echeverria v. City of Chicago, et al.,*, No. 12-cv-08777 (N.D. Ill.).

35. That the unconstitutional actions of the defendants as alleged in this complaint were part and parcel of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department, including its Internal Affairs Division, I.P.R.A., the Detective Division, and the Public Affairs Section. This involvement and ratification is further demonstrated, inter alia, by the public statements of these policy making officials, and the Department's failure to properly investigate the unconstitutional conduct of the Defendants, or to discipline them for their unconstitutional conduct.

36. The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injury and death of Martice Milliner and of the injury to his Estate, because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that their false, incomplete, and misleading reports would go unchallenged by these supervisors and fellow officers, from the police Superintendents, Police Board, and Directors of I.P.R.A. on down, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

37. But for the belief that they would be protected, both by fellow officers and by the department, from serious consequences, Defendants Zaid Abdallah and other unknown Chicago police officers would not have engaged in the conduct that resulted in the shooting and death of Martice Milliner.

38. The interrelated policies, practices and customs, as alleged in this complaint,

individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant officers to commit the acts alleged in this complaint against Martice Milliner; they, therefore, are the moving forces behind, and the direct and proximate causes of, the injuries to Martice Milliner and his Estate.

39. Additionally, the failure to properly hire, train, supervise, discipline, monitor, control, counsel and/or transfer the Defendant officers was also done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Martice Milliner and his Estate.

40. Among other things, the policies, practices and customs alleged in this complaint encouraged the extrajudicial shooting and killing of Black men, other police misconduct, the fabrication of evidence, the intimidation of witnesses, and the making of false, incorrect and misleading statements and reports, and the maintenance of a code of silence. These policies, practices and customs, therefore, are the moving forces behind, and the direct and proximate causes of, the unconstitutional acts committed by the Defendants in this case and the injuries to Martice Milliner and his Estate.

WHEREFORE, pursuant to 42 U.S.C. §1983, Plaintiff demands substantial actual or compensatory damages, plus the costs of this action, attorney's fees and whatever additional relief this Court deems equitable and just.


**Count 3**
**State Law Survival Claim**

41. Plaintiff repeats and realleges paragraphs 1- 40, as if they were fully set out in this Count.

42. As a direct and proximate result of the wrongful actions of Defendants Zaid Abdallah and other unknown Chicago police officers alleged in this complaint, Martice Milliner suffered

serious injuries of a personal and pecuniary nature, including but not limited to, pain and suffering experienced as he was dying from the gunshot wounds inflicted by Defendants Zaid Abdallah and other unknown Chicago police officers, subjecting Defendants to liability pursuant to 755 ILCS 5/27-6, commonly referred to as the Survival Statute.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, and because Defendants Zaid Abdallah and other unknown Chicago police officers acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## Count 4
## State Law Claim for Wrongful Death

43. Plaintiff repeats and realleges paragraphs 1-42.

44. Martice Milliner is survived by his next of kin under Illinois law.

45. Martice Milliner was pronounced dead on July 10, 2015.

46. The wrongful death of Martice Milliner was proximately caused by the willful and wanton conduct of Defendants Zaid Abdallah and other unknown Chicago police officers in violation of 740 ILCS § 180.1.

47. Defendant police officers' wrongful conduct was the direct and proximate cause of injury and damage to Martice Milliner and his Estate.

48. Martice's next of kin have lost and will continue to lose the pecuniary support, consortium, society, companionship of Martice and have suffered the grief and sorrow from the loss of his love and affection, as a proximate result of his wrongful death.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, and because Defendants Zaid Abdallah and other unknown Chicago police officers acted

11

maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## Count 5
## State Law Claim for Funeral Expenses

49. Plaintiff repeats and realleges paragraphs 1- 48, as if they were fully set out in this Count.

50. As a direct and proximate result of the actions of Defendants Zaid Abdallah and other unknown Chicago police officers alleged in this complaint, having been taken within the scope of Defendants' employment with the City of Chicago, Plaintiff and the Estate of Martice Milliner sustained losses in the form of funeral and burial expenses.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, and because Defendants Zaid Abdallah and other unknown Chicago police officers acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## Count 6
## State Law Claim for Conspiracy

51. Plaintiff repeats and realleges paragraphs 1- 50, as if they were fully set out in this Count.

52. Defendants Zaid Abdallah and other unknown Chicago police officers, together with their unsued co-conspirators, reached an understanding, engaged and continue to engage in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to unreasonably stop, seize, shoot and kill Martice Milliner in violation of his constitutional rights, to complete false, inaccurate, and misleading reports, and to make false statements to

12

superior officers in order to conceal their wrongdoing.

53. In furtherance of this conspiracy or conspiracies, the Defendants, together with their unsued co-conspirators, committed the overt acts set alleged in this complaint.

54. These conspiracies are continuing.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, and, because Defendants Zaid Abdallah and other unknown Chicago police officers acted maliciously, wantonly, or oppressively, plaintiff demands punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## Count 7
## State Law Claim for Battery

55. Plaintiff repeats and realleges paragraphs 1- 54, as if they were fully set out in this Count.

56. The Defendants knowingly and without legal justification caused bodily harm to Martice when they shot and killed him, thereby constituting battery under Illinois law.

WHEREFORE, Plaintiff demands substantial actual or compensatory damages, and, because Defendants Zaid Abdallah and other unknown Chicago police officers acted maliciously, wantonly, or oppressively, plaintiff demands punitive damages, plus the costs of this action and whatever additional relief this Court deems equitable and just.

## Count 8
## State Law Claim for Respondeat Superior Against Defendant City of Chicago

57. Plaintiff repeats and realleges paragraphs 1-56, as if they were fully set out in this Count.

58. Defendants Zaid Abdallah and other unknown Chicago police officers were, at all

13

times material to the allegations made in this complaint, employees and agents of the Defendant City of Chicago acting within the scope of their employment. Defendant City of Chicago is liable for the acts of Defendants which violated state law under the doctrine of respondeat superior.

WHEREFORE, Plaintiff demands judgment for compensatory damages, jointly and severally from the City of Chicago plus the costs of this action and whatever additional relief this Court deems equitable and just.

## Count 9
**745 ILCS 10/9-102 Claim Against Defendant City of Chicago**

59. Plaintiff repeats and realleges paragraphs. 1- 58, as if they were fully set out in this Count.

60. Defendant City of Chicago was the employer of Defendants Zaid Abdallah and other unknown Chicago police officers at all times relevant to the allegations contained in this complaint.

61. Defendant police officers committed the acts alleged in this complaint under the color of law and in the scope of their employment as employees of the City of Chicago, and the City is liable for their actions under 745 ILCS 10/9-102.

WHEREFORE, Plaintiff demands judgment against the Defendant City of Chicago in the amount awarded to Plaintiff against any and all individual Defendants as damages, attorney's fees, costs and interest, and/or for any settlement entered into between the Plaintiff and Defendants, and for whatever additional relief this Court deems equitable and just.

July 7, 2016                                          /s/Andrew Stroth

Andrew M. Stroth
Action Injury Law Group, LLC
191 North Wacker Drive, Suite 2300
Chicago, IL 60606
(312) 771-2444
astroth@actioninjurylawgroup.com

Carlton Odim
Odim Law Offices
225 West Washington Street, Suite 2200
Chicago, Illinois 60606
(312) 578-9390
carlton@odimlaw.com

*ATTORNEYS FOR PLAINTIFF*